**REED et ux. v. BEHELER et al.**
**No. 14799.**

Court of Civil Appeals of Texas.
Fort Worth.

Dec. 13, 1946.

Rehearing Denied Jan. 10, 1947.

626

· Clarence E. Farmer, of Fort Worth, for appellants.

· Thompson, Walker, Smith & Shannon and F. B. Walker, all of Fort Worth, for appellees.

McDONALD, Chief Justice.

R. E. Reed and wife Mary Louise Reed brought this suit against W. M. Beheler and others to recover a house and lot in the City of Fort Worth. In view of the disposition we make of the appeal, it is necessary only to discuss the case as pleaded against Beheler, because the case against the other defendants depends upon cancellation of the conveyance of the property from appellants to Beheler.

In the petition it is alleged that appellants, plaintiffs in the court below, purchased the property in question in 1937. That they paid therefor the sum of $286.50 in cash, and executed a note in the principal sum of $2578.50 for the remainder of the purchase price. That plaintiffs paid the installments falling due during the years 1937, 1938, 1939, and a part of the year 1940. That appellants occupied the property as their homestead until Beheler dispossessed them in March of 1940. That Beheler obtained a deed to the property from appellants through fraud, said deed being dated March 22, 1940. That Beheler told Mrs. Reed that he would pay her the sum of $25 for the property and would assume the balance owing on the loan against the property. That Mr. Reed was insane at that time and that Beheler knew that he was insane. That Mrs. Reed did not appear before the notary whose purported acknowledgment appears on the deed, and that she did not acknowledge the deed before the notary. Other allegations need not be detailed, it being sufficient to say that the pleadings are ample to raise the issues concerning Mrs. Reed's acknowledgment of the deed and the insanity of Mr. Reed.

Only two issues were submitted to the jury. In answer to the first the jury found that Mrs. Reed appeared before the notary and acknowledged the deed. They failed to answer the second issue, which reads as follows:

"Do you find from the preponderance of the evidence that at the time R. E. Reed signed the deed in question he was mentally incapable of understanding the nature and effect of his act in so signing the same?"

Judgment was rendered on the verdict denying plaintiffs any of the relief sought. They have appealed, presenting twelve points of error.

It is first argued that the undisputed evidence shows that Mrs. Reed did not appear before the notary and acknowledge the deed, and in the alternative that a new trial should be granted because the evidence is insufficient to support the finding of the jury that she did so. Mrs. Reed, her daughter and her daughter's husband testified that she did not appear before the notary or acknowledge the deed. The certificate of the notary is in proper form. The notary did not testify. Beheler sent the deed to Mrs. Reed through the mail with a letter instructing her to · sign it before a notary public, and further instructing her to return the deed, after it had been signed and acknowledged by herself and husband, attached to a draft as had been previously explained to her by Beheler. The deed was then sent to a bank in Fort Worth, attached to a draft for $25, bearing the purported signatures and acknowledgments of Mr. and Mrs. Reed. Beheler examined the deed, and paid the amount of the draft to the bank. He testified that he did not see the deed from the time he sent it to Mrs. Reed to the time it came to the bank in Fort Worth. He further testified that he paid an attorney to look over the deed to see whether it was properly signed and acknowledged before he paid the draft. There is nothing in the record to suggest that Beheler had any notice that the deed had not been properly acknowledged.

█ It is our opinion that the evidence is sufficient to support the finding of the jury that Mrs. Reed appeared before the

notary and acknowledged the deed. Article 3723, Revised Civil Statutes, provides:

"All declarations and protests made and acknowledgments taken by notaries public, and certified copies of their records and official papers, shall be received as evidence of the facts therein stated in any court of this State."

■ The language of the statute is so plain that it does not require construction. The recitals of the certificate constitute evidence that Mrs. Reed appeared before the notary and acknowledged the deed. Stout v. Oliveira, Tex.Civ.App., 153 S.W. 2d 590; 1 Tex.Jur., pp. 584-587. Article 3723 appears to be a statutory declaration of the rule generally prevailing in other jurisdictions. 1 C.J.S., Acknowledgments, § 122, at page 882 et seq., and in 1 Am. Jur. pp. 374 et seq. The certificate is self-proving, and needs no supporting evidence at least to raise an issue as to the truth of its recitals. As against the testimony of Mrs. Reed, her daughter and son-in-law, all of whom were in the category of interested witnesses, the jury were warranted in finding as they did.

■ Appellants next contend that the trial court should have granted a new trial on account of newly discovered evidence. In their motion for new trial appellants alleged that they had discovered the whereabouts of the notary, that they had obtained his deposition wherein he testified that Mrs. Reed did not appear before him and acknowledge the deed, that appellants were not able to obtain the notary's deposition in time for the trial, that they made efforts to find him but failed for the reason that he was reported to have left the city of his residence and would not be back for some days. Granting the truth of the allegations of the motion for new trial, they are not sufficient to bring the case within the rules requiring the granting of a new trial on the ground of newly discovered evidence. Mrs. Reed's daughter testified that she knew the notary well, and that he was a friend of the Reed family. The most that the allegations in the motion for new trial show is that the notary was temporarily away from home at the time of the trial. There is no showing that appellants could not have obtained his deposition at some earlier date before the trial, and they did not seek to continue the case because of the lack of such testimony. A new trial will not be granted for newly discovered evidence unless diligence was exercised to procure the testimony at the former trial. 31 Tex.Jur., p. 95. The newly discovered evidence which will entitle the movant to a new trial is proof which has come to light since the trial. 31 Tex.Jur., p. 93. The burden is upon the movant to show that he exercised diligence to obtain such testimony. Id., p. 97. Appellants should have sought a continuance if, as alleged in their motion, the notary was absent from his home and, to quote from their motion, "would not be back for some days." 31 Tex.Jur., p. 103. The motion for new trial was not verified. For this reason alone the denial of a new trial on the ground of newly discovered evidence was not reversible error. Bradford v. Manney, Tex. Civ.App., 133 S.W.2d 601, writ dismissed; Krider v. Hempftling, Tex.Civ.App., 137 S.W.2d 83; Grays v. Harrison, Tex.Civ.App., 179 S.W.2d 1020.

■ Appellants have filed a motion in this court to amend the record on appeal by adding thereto the deposition of the notary, taken since the trial. In view of what has been said, it would serve no useful purpose to bring the deposition into the record filed in this court. The motion is therefore overruled.

As has been noted, the second special issue inquired whether Mr. Reed was mentally capable of understanding the nature and effect of his act in signing the deed. The jury did not answer this issue. Appellants contend that it was error to enter judgment on the verdict in the absence of an answer to this issue.

Appellees contend that the issue is an immaterial one, and that they were entitled to judgment regardless of which way the jury might have answered the issue.

If we assume for the sake of argument that Reed was mentally incapable, we must nevertheless affirm the judgment.

The evidence shows without dispute that Reed was serving a sentence in a Federal

penitentiary when this deed was executed for violation of the narcotic laws. Plaintiffs alleged that he was insane at the time.

In Wright v. Hays' Administrator, 10 Tex. 130, 60 Am.Dec. 200, the rule was announced, as the holding is summarized in Green v. Windham, 115 Tex. 162, 278 S.W. 1101, 1102, "That a married woman has the right to convey her separate property and the community property without her husband's joinder where he had abandoned her or is civiliter mortuus." Among the cases cited in Green v. Windham are the two following.

In Fullerton v. Doyle, 18 Tex. 3, it is held that the wife may sell community land in order to provide herself and children with necessaries where the husband has abandoned her, and that the period of abandonment is not material except to show that it was not temporary.

In Slator v. Neal, 64 Tex. 222, the court, following Cheek v. Bellows, 17 Tex. 613, 67 Am.Dec. 686, and Wright v. Hays, supra, upheld a sale by the wife of community property without the joinder of her husband where he had been sentenced to the penitentiary. The court said:

"The conviction, sentence and confinement of Neal in the penitentiary rendered it impossible for him to manage and control their common property, or to aid in supporting Mrs. Neal and her children. His condition as a convict, immured in the penitentiary for two years, a condition superinduced by his own voluntary act in violating the penal laws of the state, is certainly incompatible with the idea of his management and control of their community property. For all practical purposes, outside of the prison, the convict is civiliter mortuus."

The authority of the wife to dispose of community property in case of insanity of her husband is fully discussed in Magnolia Petroleum Co. v. Still, Tex.Civ.App., 163 S.W.2d 268, 272, writ of error refused. The carefully written opinion in that case cites many authorities, and in view of the action of the Supreme Court in refusing a writ of error, it may be taken as a recent and an authoritative pronouncement of the law. The following excerpt from the opinion reflects, without doubt, the law as developed in the decisions:

"We think that Mrs. Still as the wife of an insane husband had the power, without qualifying under the community administration statutes, to convey the mineral interest in the community homestead here in controversy for the purpose of discharging the vendor's lien thereon and to pay for necessaries in support of herself, insane husband, and children."

It is thus seen that our courts hold that a married woman whose husband is confined in the penitentiary or is insane may convey community property, even the homestead, for the purpose of providing herself and children with necessaries or for the purpose of discharging a lien against the property.

In some of the cases it is said that the wife has such authority when her husband is incurably insane, and in Duarte v. Gutierrez, Tex.Civ.App., 175 S.W.2d 480, it is said that a mere temporary incapacity on the part of one of the spouses will not authorize the other, acting alone, to convey the homestead. Appellants in the case before us contend in their brief that Mr. Reed was only temporarily insane, and is now recovered, and that for such reason we may not apply the rules above stated. We will agree that a wife should not ordinarily be allowed authority to convey the community property without joinder of her husband in a case where he is merely suffering from a temporary incapacity. But if we are to allow her the authority to convey community property under the circumstances described, we must not for all practical purposes destroy that authority by saying that in every case the conveyance made by her shall be upheld only if the insane condition of the husband proves to be permanent. If her conveyance is to be set aside in the event the husband's sanity is restored, then it is obvious that careful purchasers will not be willing to incur the title risks involved in such a case. We think that the situation is analogous to that found in the case of an abandonment by the husband, where the Supreme Court said in an early day

that the period of abandonment is not material except to show that it was not temporary. Fullerton v. Doyle, 18 Tex. 3, cited supra. Also, the pleadings of appellants are not founded on any theory that Mr. Reed was suffering from a mere temporary incapacity. The pleadings allege that at the time of the conveyance to Beheler Mr. Reed was insane and totally incapable mentally of executing a deed, and that he had been in such condition continually since October of 1939. The pleadings allege that he was insane until about the month of September or October, 1940. In another portion of the pleadings it is alleged that Reed was placed in a hospital in September of 1939 as an insane psychopathic patient. In still another portion of the pleadings it is alleged that Reed was insane at the time he executed the deed to Beheler, and that he remained mentally incapacitated for several years thereafter. The record before us does not show a case of mere temporary incapacity of the husband, but shows, by appellants' own pleadings, a case were the husband was insane for a substantial length of time, and certainly for a sufficient length of time to create the kind of situation which all of our decisions declare to be sufficient to vest in the wife authority to convey community property for the purposes above described.

No issue was submitted to the jury touching upon the question of the necessity for the conveyance by the wife, but we think that the evidence shows without dispute that she was in necessitous circumstances, and that the conveyance was made at least in part for the purpose of taking care of the lien against the property. Payments of taxes and installments of the lien were far behind, the lien holder was threatening foreclosure, and the property was in bad physical condition. Mrs. Reed had not lived in it for several months, the furniture had been re-possessed by the furniture store from which it had been purchased, the plumbing had frozen, and various repairs were needed on the property. Reed had not been contributing anything to Mrs. Reed's support, and she had been living with her children. We think that the facts clearly bring the case within the rules above stated.

Appellees argue that Mrs. Reed's deed was valid even without an acknowledgment, in view of the fact that she was, under the above authorities, in effect conveying the property as a feme sole. Persuasive authorities are cited in support of this contention, but we prefer to base our holding on the finding of the jury that she did in fact appear before the notary and acknowledge the deed.

Appellants charge error in the refusal of the court to submit four specially requested issues. The first inquired if the property was the homestead of appellants. From what has already been said, the judgment must be affirmed even if it was the homestead. The other three issues are immaterial if we are correct in upholding the conveyance to Beheler.

Appellants charge error in the failure of the court to charge the jury on the questions of fraud. Appellants did not request the submission of issues relating to the charges of fraud, and have therefore waived that ground of recovery. Texas Civil Procedure, Rule 279.

Appellants' brief contains a discussion of the question of limitation, but we do not see that the judgment is based upon any finding as to limitation, and therefore do not undertake a consideration of that question.

The judgment of the trial court is affirmed.